UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| WILLIAM LOYD HOLTZCLAW, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>) CV418-144<br>WARDEN JOSE MORALES, )<br>*et al.* )<br>)<br>Defendants. ) | |

## ORDER AND REPORT AND RECOMMENDATION

Proceeding *pro se* and *in forma pauperis*, plaintiff William Holtzclaw bring this 42 U.S.C. § 1983 complaint against the warden, several administrators, and two medical staff at Coastal State Prison (CSP). The Court granted Holtzclaw's request to pursue his case *in forma pauperis* (IFP), doc. 4, and he returned the necessary forms. Docs. 5 & 6. The Court now screens Holtzclaw's Complaint pursuant to 28 U.S.C. § 1915A, which requires the immediate dismissal of any *pro se* complaint that fails to state at least one actionable claim against a governmental entity or official.

**I.   BACKGROUND**

Plaintiff alleges that: despite requiring a shower chair to safely

shower (due to his cerebral palsy and muscular dystrophy), only an "unsafe chair" was provided for use in CSP showers. Doc. 7 at 5. That chair eventually broke, causing Holtzclaw to fall and injure himself in January 2018. *Id*. Nurses Parker and Hodges "refused" to provide any medical treatment after Holtzclaw's fall, despite his complaints of head and back injury, "saying if [he] wasn't bleeding they would not waste time checking on [him]." *Id*. After his January fall, maintenance "repaired" the chair by "tying a t-shirt around the base of it." Doc. 8 at 5. The chair broke again in March, and plaintiff fell yet again in July 2018. *Id*. Plaintiff thus also names Maintenance Department administrator Mr. Cirone and Medical Department administrator Mr. Milton, for their failure to either repair or replace the broken, dangerous shower chair despite his "repeated pleas and grievances" requesting help. *Id*. He seeks over a million dollars in compensatory damages against the various defendants. Docs. 7 at 6 & 8 at 6.

II.  ANALYSIS[1]

Liberally construing his allegations, plaintiff invokes both 42 U.S.C.

---

[1] *See Gilbert v. Daniels*, 624 F. App'x 716, 717 (11th Cir. 2015) ("We liberally construe the pleadings of *pro se* parties. . . .") (citing *Campbell v. Air Jamaica Ltd.*, 760 F.3d 1165, 1168 (11th Cir. 2014)).

2

§ 1983 and the Americans with Disabilities Act of 1990 (ADA). He pleads that, despite knowing that he requires a shower chair, Prison staff failed to provide a safe shower chair. As a result of this failure, plaintiff was repeatedly injured in three separate falls. Prison medical staff then declined to treat him, as his injuries did not appear sufficiently serious. He continues to suffer pain as a result of the falls.

### A. Deliberate Indifference Claims

In order to state an Eighth Amendment prisoner conditions claim, plaintiff must show that (1) being denied access to a working, safe shower chair was "objectively, sufficiently serious" and resulted "in the denial of the minimal civilized measure of life's necessities," and (2) that prison officials were deliberately indifferent to "an excessive risk to inmate health or safety." *See Farmer v. Brennan*, 511 U.S. 825, 834. In order to establish deliberate indifference, plaintiff must show that a defendant had (1) subjective knowledge of a risk of serious harm and (2) disregarded that risk. *Cagle v. Sutherland*, 334 F.3d 980, 987 (11th Cir. 2003). Holtzclaw contends that he repeatedly notified CSP staff about the broken chair, and that the only action taken to remedy the danger was "tying a tshirt [sic] around" the broken chair *after* his first fall. Doc. 8 at 3 & 5. Plaintiff

alleges that temporary measure did not cure the problem, as he has since fallen twice. *Id*. at 5. He further asserted that had CSP at any point provided him with an unbroken shower chair, he never would have been injured. *Id.* Failure to provide a safe shower chair constitutes more than mere negligence. Failure to provide a working shower chair conceivably rendered plaintiff's use of the prison shower, a basic necessity, unsafe.

"Prison officials should not ignore the basic needs of a handicapped individual or postpone addressing those needs out of mere convenience or apathy." *LaFaut v. Smith*, 834 F.2d 389, 394 (4th Cir. 1987) (jailers' actions, including a failure to make minor accommodations in a timely manner, which caused the plaintiff great difficulty in using the toilet, fell short of meeting the "broad and idealistic concepts of dignity, civilized standards, humanity, and decency" embodied in the Eighth Amendment). "[T]he delay in providing a [working] shower chair appears to have resulted not only in the unnecessary infliction of pain, but also in a needless indignity that a jury could find was inconsistent with the Eighth Amendment." *Schmidt v. Odell*, 64 F. Supp. 2d 1014, 1031 (D. Kan. 1999). Plaintiff has pled enough to warrant a response from administrative defendants Milton (Maintenance) and Cirone (Medical), who he contends

4

are responsible for the provision and maintenance of shower chairs.

Holtzclaw does not, however, allege enough to warrant a response from Nurses Parker and Hodges. Prison officials' deliberate indifference "to an inmate's serious medical needs violates the inmate's right to be free from cruel and unusual punishment." *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989); *Estelle v. Gamble*, 429 U.S. 972 104 (1976); *see generally Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994) (although prison conditions may be restrictive and harsh, prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety). Holtzclaw alleges that since his fall, Nurses Parker and Hodges refused to offer him any form of medical treatment because -- without examining him personally -- they deemed his injuries insufficient. Doc. 7 at 4-5 (alleging they declined to treat him because he wasn't "bleeding").

A "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003); *see, e.g., Hutchinson v. N.Y. State Corr. Officers*, 2003 WL 22056997 at * 5 (S.D.N.Y. Sept. 4,

2003) (a "condition of urgency, one that might produce death, degeneration or extreme pain"). Only "those deprivations denying the 'minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). "Mere 'malpractice' allegations do not suffice." *Jackson v. Franks*, 2012 WL 6626020 at * 1 (S.D. Ga. Dec. 19, 2012). Here, Holtzclaw only states that he suffered "injuries" to his back and neck. Doc. 7 at 5. There is no allegation that he suffered more than bumps and bruises attendant to his fall, "[m]inor injuries" far short of a constitutionally significant "serious medical need" obviously requiring medical attention. *Williams v. Morales*, 2018 WL 2087247 at *2 (May 4, 2018); *Young v. United States*, 2015 WL 3605052 at *6 (M.D. Fla. June 8, 2015) (collecting cases). Even so, mere claims of negligence or inattention by a medical practitioner do not rise to the level of an Eighth Amendment violation. *Estelle*, 429 U.S. at 106. "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by" the Constitution. *Whitley v. Albers*, 475 U.S. 312, 219 (1986). Meaning, plaintiff has failed to state a claim for deliberate indifference to a serious medical need against defendant Nurses Parker

and Hodges.

**B. ADA Claim**

Finally, Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Federal regulations implementing Title II require public entities to "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7).[2]

To state a claim under the ADA, a plaintiff must be a "qualified individual with a disability" and must contend that he has been "excluded from participation in or [ ] denied the benefits of . . . a public entity, or [ ] subjected to any discrimination by any such entity." 42 U.S.C. § 12132. In cases where the alleged violation involves the denial of a reasonable

---

[2] Because Congress explicitly authorized the Attorney General to promulgate regulations under the ADA, see 42 U.S.C. § 12134(a), the regulations "must [be given] legislative and hence controlling weight unless they are arbitrary, capricious, or plainly contrary to the statute." *United States v. Morton*, 467 U.S. 822, 834 (1984).

modification/accommodation, "the ADA's reasonable accommodation requirement usually does not apply unless triggered by a request." *Kiman v. New Hampshire Dep't of Corrs.*, 451 F.3d 274, 283 (1st Cir. 2006) (quotes and cite omitted). "This is because a person's 'disability and concomitant need for accommodation are not always known . . . until the [person] requests an accommodation.' However, 'sometimes the [person]'s need for an accommodation will be obvious; and in such cases, different rules may apply.'" *Id.* (cites omitted).

Here, Holtzclaw alleges that he is a qualified individual with a disability (his cerebral palsy and muscular dystrophy limit his activities of daily life, including showering) and that he was denied a reasonable accommodation by a public entity (CSP). Doc. 8 at 4-5; *see Penn. Dep't of Corrs. v. Yeskey*, 524 U.S. 206 (1998) (state prisons and state prison services are "public entities" within meaning of ADA). While the ADA does not "require a public entity to provide to individuals with disabilities personal devices," such as a wheelchair or cane, *see* 28 C.F.R. § 35.135, the provision of a *usable* shower chair falls well within the meaning of the Act. *Kiman*, 451 F.3d at 288 (denying summary judgment because, while prison staff had made a shower chair "available" for use, plaintiff was effectively

8

denied its use because he could not reasonably access it); *Schmidt*, 64 F. Supp. 2d at 1033; *Kaufman v. Carter*, 952 F. Supp. 520, 522-23 (D. Mich. 1996). Holtzclaw pleads enough, at this stage, to warrant a response from the Prison officials in charge of responding to his shower chair accommodation requests, defendants Milton and Cirone.[3]

## III.  CONCLUSION

In sum, plaintiff's Eighth Amendment claims against Nurses Parker and Hodges and his ADA claims against Milton and Cirone in their individual capacities should be **DISMISSED** from the Complaint. Holtzclaw's Eighth Amendment claims against defendants Milton and Crone, as well as his ADA claims against Milton and Cirone in their *official* capacity, survive preliminary screening. The Court **DIRECTS** the Clerk to forward a copy of plaintiff's Amended Complaint, docs. 7 & 8, to the United States Marshal for service upon the remaining defendants.

---

[3]  The ADA does not, however, provide for individual liability. *Mason v. Stallings*, 82 F.3d 1007, 1009 (11th Cir. 1996). Any claims against defendants Milton and Cirone in their individual capacities should therefore be **DISMISSED** from the case.

Further, plaintiff originally named Warden Morales, Deputy Warden Owens, Chief Counselor Rivers, Head Nurse Gregory, Unit Manager Jackson, and Dr. Awe in his Complaint. Doc. 1. Their names, however, have been dropped entirely from his Amended Complaints and no allegations are directed at any of them (docs. 7 & 8). These defendants should be **DISMISSED** from the case.

Meanwhile, it is time for Holtzclaw to pay his filing fee. His PLRA paperwork reflects $0 in average monthly deposits, with over four thousand dollars in outstanding court charges/obligations. Doc. 6. He therefore owes a $0 initial partial filing fee. *See* 28 U.S.C. § 1915(b)(1) (requiring an initial fee assessment "when funds exist," under a specific 20 percent formula). Plaintiff's custodian (or designee) shall therefore set aside 20 percent of all future deposits to his account, then forward those funds to the Clerk each time the set aside amount reaches $10.00, until the balance of the Court's filing fee has been paid in full.

This Report and Recommendation (R&R) is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3. Within 14 days of service, any party may file written objections to this R&R with the Court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Report and Recommendations." Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge. The

district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to timely file objections will result in the waiver of rights on appeal. 11th Cir. R. 3-1; *see Symonett v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO ORDERED AND REPORTED AND RECOMMENDED**, this <u>19th</u> day of October, 2018.

_____
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA