# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF GEORGIA
### SAVANNAH DIVISION

WILLIAM LOYD HOLTZCLAW,    )
                          )
    Plaintiff,            )
                          )
v.                        )
                          )          CV418-144
WARDEN JOSE MORALES,      )
*et al.*                  )
                          )
    Defendants.           )

## **REPORT AND RECOMMENDATION**

Proceeding *pro se* and *in forma pauperis*, plaintiff William Holtzclaw brought this 42 U.S.C. § 1983 complaint against the warden, several administrators, and two medical staff at Coastal State Prison (CSP). The Court granted Holtzclaw's request to pursue his case *in forma pauperis* (IFP), doc. 4, and he returned the necessary forms. Docs. 5 & 6. The Court screened the complaint and determined that plaintiff's Eighth Amendment claims against Nurses Parker and Hodges and his ADA claims against Milton and Cirone should be dismissed from the complaints, but that his Eighth Amendment claims against defendants Milton and Cirone, as well as his ADA claims against Milton and Cirone in their official capacity survived preliminary screening. Doc. 9 at 9. The district judge

adopted the Report and Recommendation, doc. 11, and the identified parties appeared. The case then proceeded to discovery and the remaining defendants filed a Motion for Summary Judgment. Doc. 36. For the following reasons, that motion should be **GRANTED**.

I.   BACKGROUND

Plaintiff alleged that: despite requiring a shower chair to safely shower (due to his cerebral palsy and muscular dystrophy), only an "unsafe chair" was provided for use in CSP showers. Doc. 7 at 5. That chair eventually broke, causing Holtzclaw to fall and injure himself in January 2018. *Id*. Nurses Parker and Hodges "refused" to provide any medical treatment after Holtzclaw's fall, despite his complaints of head and back injury, "saying if [he] wasn't bleeding they would not waste time checking on [him]." *Id*. After his January fall, maintenance "repaired" the chair by "tying a t-shirt around the base of it." Doc. 8 at 5. The chair broke again in March, and plaintiff fell yet again in July 2018. *Id*. Plaintiff thus also named Maintenance Department administrator Mr. Cirone and Medical Department administrator Mr. Milton, for their failure to either repair or replace the broken, dangerous shower chair despite his "repeated pleas and grievances" requesting help. *Id*. He sought over a million

2

dollars in compensatory damages against the various defendants.  Docs. 7 at 6 & 8 at 6.

## II.  ANALYSIS[1]

Under the PLRA exhaustion provision, a prisoner must exhaust all available administrative remedies *before* filing an action that challenges the conditions of his confinement.  See 42 U.S.C. § 1997e(a).  Exhaustion is a "pre-condition to suit" that must be enforced even if the available administrative remedies are either "futile or inadequate."  *Harris v. Garner*, 190 F.3d 1279, 1285-86 (11th Cir. 1999), *aff'd in part and vacated and remanded on other grounds by Harris v. Garner*, 216 F.3d 970 (2000) (*en banc*); *see also Jones v. Bock*, 549 U.S. 199, 199-200 (2007) ("There is no question that exhaustion is mandatory under the PLRA").  When a defendant moves to dismiss and puts forward proof showing that plaintiff failed to exhaust and defendant did not inhibit his efforts to do so, the PLRA requires the Court to dismiss the unexhausted claims.[2]  *See Turner*

---

[1]  *See Gilbert v. Daniels*, 624 F. App'x 716, 717 (11th Cir. 2015) ("We liberally construe the pleadings of *pro se* parties. . . .") (citing *Campbell v. Air Jamaica Ltd.*, 760 F.3d 1165, 1168 (11th Cir. 2014)).

[2]  Not only does the PLRA require exhaustion, it "requires proper exhaustion," *Woodford v. Ngo*, 548 U.S. 81, 93 (2006), which means an inmate must "us[e] all steps" in the administrative process, and comply with any administrative "deadlines and other critical procedural rules," before filing a complaint about prison conditions in federal court.  *Id*. at 89-91 (citation omitted); *see also Lambert v. United States*, 198 F.

3

*v. Burnside*, 541 F.3d 1077, 108-83 (11th Cir. 2008) (describing the two-prong "facial" and "factual" evaluation of exhaustion as a "matter in abatement," as it is a precondition to suit, not an adjudication on the merits); *Harris*, 190 F.3d at 1285-86. Simply put, if an administrative remedy is "available," it *must* be exhausted. 42 U.S.C. § 1997e(a).

Coastal State Prison maintains a grievance procedure. Doc. 36-10. Under the procedure, an inmate must submit a Grievance Form to the counselor. *Id.* at 8. The counselor must then forward the form to the Grievance Coordinator, *id.*, who screens the grievance, and then submits it to the Warden, *id.* at 9. The Warden has 40 days from the date the inmate provided the Grievance Form to the counsel to deliver a decision to the offender. *Id.* at 11. If the inmate does not receive a response to the grievance within the allotted time period, or if the inmate receives a response he is unhappy with, he may file out a Central Office Appeal Form. *Id.* at 13. However, the grievance procedure also contemplates that—even if a grievance is not timely responded to—an inmate may wait until he

---

App'x 835, 840 (11th Cir. 2006) (proper exhaustion requires filing a grievance "under the terms of and according to the time set by" prison officials). If a prisoner fails to complete the administrative process or falls short of compliance with procedural rules governing prisoner grievances, he procedurally defaults his claims. *Johnson v. Meadows*, 418 F.3d 1152, 1159 (11th Cir. 2005).

receives an original grievance decision to file a Central Office Appeal. *Id.* Because an administrative grievance procedure was in place and available for Holtzclaw's use, he was required to file a grievance and fully exhaust all of his available administrative remedies *prior* to filing his Complaint. *See Johnson*, 418 F.3d at 1156.

In this case, Holtzclaw filed a grievance on January 23, 2018 following his initial fall. Doc. 36-13 at 3. He also filed a grievance on March 2, 2018 after a second alleged fall.[3] Doc. 42 at 25. A Staff Local Investigative Report and Recommendation was provided to the Grievance Coordinator on July 27, 2018, doc. 36-13 at 14, and the Warden responded to the Grievance on August 7, 2018, *id.* at 2. Holtzclaw then appealed that grievance on August 13, 2018.

Holtzclaw signature filed his initial complaint on June 4, 2018. Doc. 1 at 7. Which was *before* he appealed his grievance—a requirement to

---

[3] There is some confusion as to whether or not Holtzclaw's second grievance was treated as separate from his January incident, or whether it was treated as a supplement. The Summary of Investigation references the alleged March fall and discusses the need for nursing requirements, which would indicate that the jail may have treated both grievances simultaneously. Doc. 36-13 at 14. However, this does not alter the analysis, as plaintiff never alleged that he completed the grievance procedure for this second fall, and in fact, appears to have not filed any timely appeal at all.

exhaust his administrative remedies.[4]  Moreover, plaintiff never alleged that he completed the grievance procedure in any of his complaints.  Doc. 1 at 4 (noting he did not appeal); doc. 7 at 4 (same); doc. 8 at 3 (alleging that he "appealed" but that he never received any responses to his grievance).[5]  His filing of amended complaints, docs. 7, 8, & 12, does not cure this error either.  The Eleventh Circuit Court of Appeals has made clear that a prisoner must have exhausted his administrative remedies at the time an action is filed, and that this failure is not cured by a subsequent amended complaint.  *Smith v. Terry*, 491 F. App'x 81 (11th Cir. 2012); *see also Harris v. Garner*, 216 F.3d 970, 981 (11th Cir. 2000) ("No amendment or supplement to a pleading can change a historical

---

[4] Even construing Holtzclaw's arguments liberally to contend that any failure to exhaust was caused by those remedies' unavailability, *see* doc. 1 at 3; *see also Ross v. Blake*, __ U.S. __, 136 S. Ct. 1850, 1859 (2016) (prisoners need only exhaust those remedies which were available to them), plaintiff fails to demonstrate an exception to the PLRA's procedural bar.  Three circumstances can render an administrative remedy, "although officially on the books," unavailable: (1) where the administrative procedure "operates as a simple dead end -- with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) when administrative remedies are so confusing that they are "essentially 'unknowable'"; or (3) where "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."  *Id.* at 1859-60.  Holtzclaw makes no such allegations here.

[5] Because the Court takes plaintiff's factual allegations in his complaint as true, the Court determines that plaintiff's "appeal" occurred some time after the filing of his second amended complaint on June 20, 2018 but before the filing of his third amended complaint on July 9, 2018.  Regardless, he did not complete this appeal until *after* he had filed his initial complaint.

6

fact...."); *Fails v. Sec'y, FDOC*, 2014 WL 4092262, at *1 (N.D. Fla. Aug. 19, 2014) ("The law of the circuit is that belated exhaustion, followed by an amended complaint, does not cure the initial failure to exhaust."); *O'Connor v. Carnahan*, 2014 WL 293457, at *4 (N.D. Fla. Jan. 27, 2014).

Because plaintiff had not exhausted his administrative remedies at the time he filed his initial complaint, doc. 1, defendants' motion should be **GRANTED** and plaintiff's claims should be **DISMISSED** as **UNEXHAUSTED**. Although defendants raise other bases for relief in their Motion for Summary Judgment, the Court should decline to reach those questions as exhaustion is a precondition to suit.

### III.  CONCLUSION

For the following reasons, the Motion for Summary Judgment should be **GRANTED**. This Report and Recommendation (R&R) is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3. Within 14 days of service, any party may file written objections to this R&R with the Court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Report and Recommendations." Any request for additional time to file objections should be filed with the Clerk

for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge. The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to timely file objections will result in the waiver of rights on appeal. 11th Cir. R. 3-1; *see Symonette v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO REPORTED AND RECOMMENDED**, this <u>6th</u> day of March, 2020.

_____
C<small>HRISTOPHER</small> L. R<small>AY</small>
U<small>NITED</small> S<small>TATES</small> M<small>AGISTRATE</small> J<small>UDGE</small>
S<small>OUTHERN</small> D<small>ISTRICT OF</small> G<small>EORGIA</small>